U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

MAY 20 2014

TONY R. MOORE, CLERK
BY_____
           DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

BRITNEY N. JONES          CIVIL ACTION NO: 13-2513

VERSUS          JUDGE DONALD E. WALTER

WELLS FARGO BANK, N.A., ET AL.          MAGISTRATE JUDGE HAYES

## MEMORANDUM RULING

This case is a result of Plaintiff's alleged damages stemming from mold in a home which was purchased from Defendant. Before this Court is Defendant Wells Fargo Bank's ("Wells Fargo") Motion to Dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). [Doc. 13]. Having considered the motion, the response, the reply, the pleadings, the record, and the applicable law, the motion is **GRANTED** and the claims are **DISMISSED WITH PREJUDICE**.

### I. BACKGROUND

#### A. Overview of Case

This case arises from alleged damages suffered by Plaintiff Britney N. Jones that were the result of mold found in a foreclosure property that her ex-husband purchased from Defendant Wells Fargo.[1] According to Plaintiff, Wells Fargo was aware of facts suggesting that mold was present in the property at the time of sale to her then-husband, but failed to adequately disclose this information. On this basis, Plaintiff maintains that she is entitled to recover from Wells Fargo both for breach of the implied warranty against redhibitory defects and for intentional or negligent

---

[1] Doc. 1; Doc. 13; Doc. 21; Doc. 29.

1

misrepresentation.[2]

The immovable property at issue in this case is located at 1425 Magnolia Ridge in Bossier City, Louisiana (the "Property"). The Property was originally acquired by Wells Fargo at a foreclosure sale conducted by the Bossier Parish Sheriff on September 8, 2010.[3] After Wells Fargo purchased the home, Wells Fargo did some remodeling and made repairs to the home.[4] Around this time, Wells Fargo hired Cox Management Services to lead the effort to remodel and repair the home. Plaintiff generally alleges that Wells Fargo's overriding concern was to cover up mold damage.

Shortly after it acquired the Property, Wells Fargo entered into discussions with Mr. Kelly Daniel Jones (to whom Plaintiff was supposedly legally married at the time) as a prospective purchaser. During the course of these discussions, Wells Fargo issued a formal written offer to Mr. Jones on December 12, 2011, wherein Wells Fargo offered to sell the Property to Mr. Jones at a price of $216,900 dollars, subject to various terms, conditions, and disclosures set forth in the offer and Standard Seller's Addendum and Property Disclosure Addendum.[5] On December 13, 2011, Mr. Jones formally accepted Wells Fargo's offer, separately signing both the offer and each of the accompanying Standard Seller's Addendum and Property Disclosure Addendum.

### B. The Property Condition Addendum and the Mold Disclosure and Release

In the offer, Mr. Jones expressly acknowledged, among other things, that the Property "is being sold in its present 'As Is' condition with no warranties, repairs, or inspections completed by

---

[2] Doc. 1 (Petition).

[3] Doc. 13-1 at pp. 2-3.

[4] *See* Doc. 21 at pp. 3-6. Plaintiff's opposition to this motion details a lot of the remodeling and repair efforts that Wells Fargo did after purchasing the home.

[5] Doc. 13-1 at pp. 2-3.

the Seller"; and that "Buyer has received no promises as to condition and no warranties, and has been afforded an opportunity to obtain an inspection by an inspector of Buyer's choosing."[6] Further, Mr. Jones agreed to and accepted the "Mold Disclosure and Release," which he executed as part of the Property Condition Addendum signed, dated, and initialed by Mr. Jones as an essential term of the parties' purchase agreement contract. Wells Fargo's Motion to Dismiss relies heavily on the Mold Disclosure and Release contained in the sale documents that provides as follows:

> **MOLD DISCLOSURE AND RELEASE**
>
> Buyer is hereby advised that mold and/or other microscopic organisms may exist at the property known as **1425 MAGNOLIA RIDGE, BOSSIER CITY, LA, 71112**. Such microscopic organisms and/or mold may cause physical injuries, including but not limited to allergic and/or respiratory reactions or other problems, particularly in persons with immune system problems, young children and/or elderly persons. Buyer acknowledges and agrees to accept full responsibility/risk for any matters that may result from microscopic organisms and/or mold and to hold harmless, release, and indemnify Seller and Seller's managing agents from any liability/recourse/damages (financial or otherwise). Buyer understands that Seller has taken no action to remediate mold. Buyer hereby acknowledges this disclosure and release and is aware of the condition set forth therein. This disclosure and release is executed voluntarily and with full knowledge of its significance. Wells Fargo Home Mortgage, Premier Asset Services or managing agents are not qualified to inspect property for mold or make recommendations or determinations concerning possible health or safety issues. The purpose of this disclaimer is to put Buyers on notice to conduct their own due diligence regarding this matter using appropriate, qualified experts. This is a legal document and Buyers are advised to seek legal counsel prior to executing same.[7]

Shortly thereafter, Wells Fargo conveyed title of the Property to Mr. Jones for the tender and receipt of the $216,900 purchase price, as evidenced by a Special/Limited Warranty Deed executed between the parties and recorded into the Bossier Parish public record on February 8, 2012. Although Plaintiff was not a party to the sale between Wells Fargo and her then-husband, Plaintiff claims that

---

[6] Doc. 13.

[7] Doc. 13-3 (Mold Disclosure and Release provision).

she acquired a one-half interest in the Property because the Property became part of the community property regime.[8]

On October 5, 2012, Mr. Jones sold his interests to in the Property to Plaintiff pursuant to a Cash Sale Deed. Plaintiff complains that sometime after acquiring clear title to the Property from her ex-husband she discovered the existence of mold in the residence.[9] According to her petition, Plaintiff then commissioned an "environmental assessment" received in June of 2013 that substantiated the presence of mold growth within the Property.

## C. The Instant Suit

This action was originally filed in the 26th Judicial District Court for the Parish of Bossier on July 16, 2013; the case was removed to this Court on August 19, 2013.[10] In the instant lawsuit, Plaintiff seeks to recover against Wells Fargo and Cox Management Services, based on allegations that Wells Fargo fraudulently concealed the existence of mold in the Property at the time it sold the Property to her ex-husband, resulting in personal and emotional injuries to Plaintiff and her minor children, and that the existence of mold in the Property otherwise constitutes a redhibitory defect, entitling Plaintiff to diminution of the purchase price she paid to her ex-husband and other consequential damages. In brief, Plaintiff alleges two claims against Wells Fargo: fraud and redhibition. Plaintiff has not named her ex-husband as a party.

Wells Fargo filed the instant motion to dismiss on October 15, 2013. Plaintiff opposes the motion by arguing that Wells Fargo actively concealed the mold and is trying to escape liability with

---

[8] Doc. 1-1 (Petition).

[9] Id.

[10] Doc. 1.

"a non-specific waiver" that misrepresents the mold contamination and Wells Fargo's involvement in covering it up.[11]

## II. APPLICABLE LAW

The instant motion was filed pursuant to Federal Rule of Civil Procedure 12(b)(6) which provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." A pleading will survive a Rule 12(b)(6) motion to dismiss if it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept all of the plaintiff's allegations as true. *Twombly*, 550 U.S. at 555. However, the plaintiff's pleading must contain more than a "formulaic recitation of the elements of a cause of action." *Id.*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

## III. DISCUSSION

### 1. Overview

This motion largely hinges on whether the Property Condition Addendum, specifically the Mold Disclosure And Release included therein, executed by Plaintiff's former husband is binding upon Plaintiff. After due consideration, this Court concludes that the disclosures are binding and Plaintiff's claims are therefore barred. Plaintiff's fraud arguments are directly contradicted by the

---

[11] Doc. 21 at p. 11.

Mold Disclosure and Release which expressly sets forth the very facts allegedly concealed or misrepresented. At a bare minimum, the As-Is Disclosure and the Mold Disclosure and Release preclude a finding that Wells Fargo engaged in any intentional or negligent misrepresentation or concealment, let alone any actions tantamount to fraud. In a similar vein, the release, at the very least, made Plaintiff aware of the possible existence of mold rendering it apparent, thereby also foreclosing her redhibition claim. As there is no possibility that Plaintiff may recover against Wells Fargo either in fraud or redhibition, it is appropriate to dismiss her claims against Wells Fargo pursuant to Rule 12(b)(6).

There are several reasons all of Plaintiff's claims must be dismissed. First, the sale was "As Is," without warranties. Importantly, the "As-Is" Disclosure specifically provides: "Buyer is not relying on Seller or it's agents as to the condition of property and/or any improvements thereon, *including but not limited to mold...*"[12] Moreover, the purchase agreement specified that "[b]uyer has received no promises as to condition and no warranties, and has been afforded an opportunity to obtain an inspection by an inspector of Buyer's choosing." Second, Wells Fargo fully and openly disclosed the mold risks involved in purchasing the house that form the basis of this lawsuit. Notably, the Mold Disclosure and Release header is in bold and uppercase font and is only one paragraph in length; indeed, the overall Property Condition Addendum which contains the mold release is only one and a half pages long.[13] Also, Wells Fargo did not deny the presence of an ongoing mold issue or pretend to have remediated it but instead explicitly acknowledged the

---

[12] Doc. 13-3 ("As-Is" Disclosure) (emphasis added).

[13] Doc. 13-3. The Property Condition Addendum, in this Court's opinion, sticks out like a sore thumb in the sale. There are four specific disclosures mentioned, including a lead-based paint disclosure, a Chinese/defective drywall disclosure, an "As Is" disclosure, a brief warning about winterization, and the mold disclosure and release.

potential risk. Third, the Mold Disclosure and Release specifically identified the potential health risks associated with the condition. Furthermore, the release contains a provision that the form was designed "to put Buyers on notice to conduct their own due diligence regarding this matter using appropriate, qualified experts." Fourth, and perhaps most importantly, Plaintiff's husband, the named buyer of the home, initialed directly above the foregoing disclosure and signed and dated the document immediately below the Mold Disclosure and Release. In fact, the Property Condition Addendum was initialed by Plaintiff's then-husband three different times on the one and a half page form and then he printed and signed his name along with the date directly beneath the Mold Disclosure and Release.[14] By doing so, Plaintiff's husband *expressly accepted* all risks associated with the presence of mold at the Property. The As-Is Disclosure and Mold Disclosure and Release unequivocally rendered the presence of mold known to the Plaintiff. In addition, Plaintiff's ex-husband was free to ask questions, hire experts, and otherwise pursue due diligence; the evidence shows that he did not do so *despite* the express mold risk. For these reasons, any argument that Wells Fargo misrepresented the mold problem within the house or actively concealed the mold must fail. In any event, Plaintiff has not pled enough factual content to allow this Court to draw so much as a reasonable inference that Wells Fargo is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678.

## 2. Fraud Claim(s) Dismissed

Plaintiff's chief argument is that Wells Fargo engaged in fraud. Plaintiff also argues that the Mold Disclosure and Release is fraudulent, and therefore the entire release should be discarded. To prevail on a fraudulent contract claim, Jones must show: (1) a misrepresentation, suppression, or

---

[14] Doc. 13-3 (property condition addendum).

omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) error induced by the fraudulent act which relates to a circumstance substantially influencing the victim's consent. *See* LA. CIV. CODE ARTS. 1953, 1955.

As already discussed in the preceding section, Plaintiff's fraud claims fail. Ultimately, the record before this Court contains no evidence whatsoever of any negligent or intentional misrepresentation or concealment on the part of Wells Fargo, let alone any actions that rise to fraud. Because the Property Condition Addendum, specifically the Mold Disclosure and Release contained therein, was signed by and acknowledged by Plaintiff's ex-husband, Plaintiff could not have relied upon an alleged misrepresentation in order to state a cause of action for negligent or intentional misrepresentation.[15] Again, the Mold Disclosure and Release should have at least caused Plaintiff to investigate, thereby allowing her to ascertain the truth "without difficulty, inconvenience, or special skill." LA. CIV. CODE ART. 1954.[16] Plaintiff's concealment argument is directly contradicted by the Mold Disclosure and Release which expressly set forth the very facts allegedly concealed. We also note that the "As-Is" Disclosure specifically provides: "Buyer is not relying on Seller or it's agents as to the condition of property and/or any improvements thereon, including but not limited to mold..."[17]

---

[15] *See Guidry v. United States Tobacco Co.*, 188 F.3d 619, 627 (5th Cir. 1999) (*citing* LA. CIV. CODE ART. 1953). Wells Fargo argues in its reply that Plaintiff cannot blame Wells Fargo for her avowed ignorance of disclosed conditions at the Property that may or may not have been withheld by her ex-husband. Doc. 29 at p. 8. This Court agrees.

[16] *In re Ford Motor Co. Bronco II Prod Liab. Litig.*, 982 F. Supp. 388, 397 (E.D. La. 1997) (noting that there can be no concealment when Plaintiff has access to the allegedly concealed information).

[17] Doc. 13-3 (As-Is Disclosure).

8

Plaintiff has offered nothing into the record other than her own speculative conjecture and dubious photographs that Wells Fargo engaged in fraud. The broad and conclusory allegations contained within her complaint are devoid of facts sufficient to survive this motion. The complaint, in this respect, is nothing but "an unadorned, the-defendant-unlawfully-harmed-me accusation" that the Supreme Court has said is inadequate. *Iqbal*, 556 U.S. at 678.

A particularly illustrative case is *Milner v. Biggs*, 522 F. App'x 287 (6th Cir. 2013) in which the Sixth Circuit held that home purchasers who bought home "as-is" from the seller did not justifiably rely on any statements from vendor regarding the presence of mold in the home that would give rise to an action for fraud or fraudulent concealment because of a mold addendum signed by the home purchasers. Like the instant case, the mold addendum at issue in *Milner* expressly warned the buyers about mold problems and that it was the home purchasers' responsibility to have a mold inspection performed.

This Court is likewise unpersuaded by Plaintiff's argument that Wells Fargo engaged in fraud by claiming that it had taken no steps to remediate the mold. Quite clearly, all of Plaintiff's claims fall squarely within the scope of the As-Is Disclosure and Mold Disclosure and Release. This Court finds no ambiguity in the language of the disclosures that Plaintiff's then-husband executed. The inclusion of complete and total release for mold and mold-related issues leaves no room for questioning the intent to release all claims arising from possible mold within the Property. Finally, this Court concludes that Plaintiff's public policy argument is without merit.

### 3. Redhibition Claim Dismissed

Plaintiff's redhibition claim must also be dismissed. The decisive issue before the court is

the whether the alleged mold problem was apparent.[18] Article 2521 of the Louisiana Civil Code provides that "[t]he seller owes no warranty [in redhibition] for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such things." *Id. See also Jessup v. Ketchings*, 482 F.3d 336, 342 (5th Cir. 2007). Apparent defects are those that the buyer might have discovered by simple inspection. *Id.* All of Plaintiff's claims against Wells Fargo suggest that the presence of mold at the Property was a latent, undisclosed condition at the time of the sale.

As already noted, this Court concludes that the As-Is Disclosure and Mold Disclosure and Release foreclose the redhibition claim. The disclosures– which were acknowledged and accepted by Plaintiff's then-husband and purchaser– rendered the presence of mold at the Property an apparent condition such that Plaintiff's claim for breach of the warranty against redhibitory defects fails as a matter of law under Article 2521. In other words, because the mold condition was disclosed to and acknowledged by Plaintiff's ex-husband before he purchased the Property, the mold was apparent. Additionally, the disclosures made Plaintiff aware of the mold problem and she therefore had a duty to investigate further. Notwithstanding these reasons, Plaintiff's entire redhibition claim is nothing more than a formulaic recitation of the elements of a redhibition claim.

This Court finds the Fifth Circuit's opinion in *Jessup v. Ketchings*, 482 F.3d 336, 343 (5th Cir. 2007) dispositive on the redhibition claim. In *Jessup*, the Fifth Circuit considered whether a buyer's failure to conduct further investigations into potential termite and water damage waived her right to sue under redhibition when a disclosure addendum and inspection reports alerted the buyer to the possibility of such damage. The Fifth Circuit held: "Because the reports and Disclosure

---

[18] *Johnson v. CHL Enterprises*, 115 F. Supp. 2d 723, 728 (W.D. La. 2000).

Addendum made Jessup aware of termite damage, she had a duty to investigate further. Her failure to do so is inexcusable under Louisiana law." *Id.* at 344. In the present matter, the As-Is Disclosure and Mold Disclosure and Release rendered the presence of mold an apparent condition under Article 2521.

## IV. CONCLUSION

Having considered the motion, the response, the reply, the record, and the applicable law, Wells Fargo's Motion to Dismiss [Doc. 13] is **GRANTED** and the redhibition and fraud claims are **DISMISSED WITH PREJUDICE.**

**THUS DONE AND SIGNED**, Shreveport, Louisiana, this the 20 day of May, 2014.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE